# GOODE v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 616. Argued November 1, 1895. — Decided November 25, 1895.

When a verdict is general upon all the counts in an indictment, sufficient in form, it must stand if any one of the counts was sustained by competent testimony.

In an indictment under Rev. Stat. § 5467, against a letter carrier charged with secreting, embezzling or destroying a letter containing postage stamps, the fact that the letter was a decoy is no defence.

A letter addressed to a fictitious person, known to be such, is a letter within the meaning of the statute, and for the purposes of Rev. Stat. §§ 5467 and 5469 a letter which bears the outward semblance of a genuine communication, and comes into the possession of the employé in the

regular course of his official business, is a writing or document within the meaning of the statute.

Where a general verdict of guilty is rendered, an objection taken to evidence admissible under one, or a part of the counts, is untenable.

The term "branch post office," as employed in those sections, includes every place within such office where letters are kept in the regular course of business, for reception, stamping, assorting or delivery.

It being shown, in this case, that the branch post office in which the offence was alleged to have been committed, was known as the Roxbury station of the Boston post office, that it had been used as such for years, and that it was a post office *de facto*, it was unnecessary to show that it had been regularly established as such by law.

GEORGE GOODE, a letter-carrier, was indicted and convicted in the District Court for the District of Massachusetts for embezzlement and theft from the mail. The indictment contained seven counts, the first three of which charged a violation of Rev. Stat., § 5467, and the last four a violation of § 5469. (The substance of these sections is printed in the margin.) The case was submitted to the jury under certain instructions, hereafter to be considered, who returned a verdict of guilty upon the whole indictment.

The facts of the case were substantially as follows:

Goode, the plaintiff in error, was a letter carrier employed in the branch post office at Roxbury, which had formerly been an independent post office, but is now known as the Roxbury station of the Boston post office. Complaints having been

---

[1] SEC. 5467. Any person employed in any department of the postal service who shall secrete, embezzle, or destroy any letter . . . intrusted to him, or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any mail carrier, mail-messenger, route-agent, letter carrier, or other person employed in any department of the postal service, or forwarded through or delivered from any post office or branch post office established by authority of the Post-master-General, and which shall contain any . . . postage stamp . . . or other pecuniary obligation or security of the government, . . . any such person who shall steal or take any of the things aforesaid out of any letter, . . . which shall have come in his possession, either in the regular course of his official duties or in any other manner whatever, and provided the same shall not have been delivered to the party to whom it is directed, shall be punishable by imprisonment at hard labor for not less than one year nor more than five years.

made of thefts from the mails at this office, Thomas J. Boynton, a post-office inspector, prepared two decoy letters, one of which was addressed to Whitcomb, Keys & Co., a firm of merchant tailors on Washington Street, in the Roxbury district, and was subsequently delivered to them in the regular course of business, and one addressed to John Muldoon, Esq., 153 Ziegler street, Boston, Mass., and postmarked West Cheshire, Conn.

Boynton, in fact, took an envelope containing that postmark, filled in the date, which was missing on the postmark, with type which he had in his office for that purpose, and cancelled the stamp with a canceller, such as was used ordinarily in the smaller post offices. He enclosed in the letter two one dollar silver certificates and five two cent postage stamps, marked the postage stamps by means of pin holes, and gave the letter to one McGrath, who was assistant superintendent of the mailing division of the main post office in Boston, but who was stationed temporarily, by direction of the postmaster, at the Roxbury office.

McGrath, when the letter carriers were out, called as witness the superintendent and person having charge of the branch post office, and in his presence put the letter into defendant Goode's box. This was not the ordinary method of depositing the mail. Indeed, he passed by the places on the outside as well as the inside of the post office, where letters are usually mailed, and went into the back room, where the letters after

---

SEC. 5469. Any person who shall steal the mail or steal or take from or out of any mail or post office, branch post office, or other authorized depository for mail matter, any letter or packet; any person who shall take the mail, or any letter or packet therefrom, or from any post office, branch post office, or other authorized depository for mail matter, with or without the consent of the person having custody thereof, and open, embezzle, or destroy any such mail, letter, or package which shall contain any . . . postage stamp . . . or other pecuniary obligation or security of the government; . . . any person who shall, by fraud or deception, obtain from any person having custody thereof, any such mail, letter, or packet containing any such article of value shall, although not employed by the postal service, be punishable by imprisonment at hard labor for not less than one year and not more than five years.

passing through the mails are sorted. Goode returned from his route, took up all the letters in his box, and went to his desk, which was situated in the same room. His own route terminated at No. 51 Ziegler Street, and it was his duty to put this Ziegler Street letter into the box of the carrier whose route included the higher numbers of Ziegler Street, or to put it into what was known as the "list box." This list box was kept for the reception of any letter known as a "beat" or a "nixie," that is, a letter addressed to a person not to be found in the district. On Goode's return from his route, the letter not being found in either of these boxes or elsewhere, he was searched and the five marked postage stamps were found upon his person. It was shown that, while absent on his route, he had the opportunity of disposing of the letter and the silver certificates therein contained. There were a large number of other letters in the box in which this Muldoon letter was put by McGrath. McGrath knew at the time that there was no such place as 153 Ziegler Street, and that there was no such person as John Muldoon. He put the letter in the box for the purpose of being able to identify its contents in case Goode embezzled them.

Goode was sentenced upon conviction to imprisonment at hard labor for three years, and thereupon sued out this writ of error.

*Mr. Elbridge R. Anderson,* (with whom was *Mr. Charles W. Bartlett* on the brief,) for plaintiff in error.

This case is one of great importance both to the government and to the defendant.

The question has not been before this court before, and it is one upon which there have been various rulings by the Circuit and District Courts of the United States, and which should be considered fully upon its merits for the future guidance of the various courts in which cases of this character are being continually tried.

The Muldoon letter was not a letter. There can be no letter — that is, message or communication — to that which is not

in existence. *United States* v. *Denicke,* 35 Fed. Rep. 407 ; *Regina* v. *Gardner,* 1· Car. & K. 628.

It never became a letter or mail matter, under the statute, because it never got into the mail in any of the ways provided by the post office authorities. *United States* v. *Rapp,* 30 Fed. Rep. 818 ; *United States* v. *Denicke, ub. sup.; Regina* v. *Rathbone,* 1 Car. & M. 220.

It was never deposited in the Roxbury post office nor in the mail for the Roxbury district deposited in the branch post office of the United States. · It never went into the office so as to get into the custody of the postmaster. The mere fact that it was carried into the post office building and put into a sorting case and in a sorter's box is not enough. It must get into the mail through the usual channels and by proper means. Had it been thrown on the floor it could not·be said that it had been deposited in the mail, and the contention is that what was done amounted to no more. *Regina* v. *Rathbone, ub. sup.; United States* v. *Rapp, ub. sup.* A ·letter, to be " deposited," must be confided to the care of the postal department for transmission. *Walster* v. *United States,* 42 Fed. Rep. 891. A letter addressed to a person not in existence and to a place that does not exist, and one that does not get into the mail in the usual course, is not intended to be conveyed by mail nor carried by a letter carrier, under §§ 5467 and 5469 of the Revised Statutes. *United States* v. *Matthews,* 35 Fed. Rep. 890 ; *United States* v. *Denicke, ub. sup.; United States* v. *Rapp, ub. sup.*

*United States* v. *Foye,* 1 Curtis, 364 ; *United States* v. *Wright,* 38 Fed. Rep. 106 ; *United States* v. *Dorsey,* 40 Fed. Rep. 752 ; *United States* v. *Bethen,* 44·Fed. Rep. 802 ; and *United States* v. *Cottingham,* 2 Blatchford, 470, supposed to hold a contrary doctrine, will be found, on examination, not to do so.

There is another principle which the plaintiff in error invokes in his behalf, which is, that wherever error is apparent on the record it is open to revision whether it be made to appear by a bill of exceptions or in any other manner. *Suydam* v. *Williamson et al.,* 20 How. 427. Where error is apparent on a record, no exception need be shown, and it

need not have been presented by a bill of exceptions. *Moline Plow Co.* v. *Webb*, 141 United States, 616; *Clinton* v. *Missouri Pacific Railway*, 122 U. S. 469; *Potomac Railroad Company* v. *Trustees of Presbyterian Church*, 91 U. S. 127. Anything appearing upon the record which would have been fatal on a motion in arrest of judgment is equally as fatal upon a writ of error, although objection was not taken below. *Slacum* v. *Pomery*, 6 Cranch, 221.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

To make a case under Rev. Stat., § 5467, it is necessary for the government to prove —

(1.) That the person charged was employed in the postal service.

(2.) That the letter that he is charged with secreting, embezzling, or destroying was entrusted to him or came into his possession, and was intended to be conveyed by mail, carried, or delivered by carrier, messenger, route agent, or other person employed in the postal service, or forwarded through or delivered from any post office or branch office, etc.

(3.) That it contained one of the articles of value described in the statute, one of which is postage stamps.

(4.) Or that the person so employed stole one of such articles out of any such letter, etc., provided the same had not been delivered to the party to whom it was directed.

Upon the other hand, § 5469 applies to every person, irrespective of his employment in the post office, and to establish a case under this section it is only necessary to prove —

(1.) That the defendant stole the mail or that he took from out of the mail or post office or other authorized depository a letter or packet, or took such mail or letter or packet therefrom, or from any post office, etc., or otherwise authorized depository, with or without the consent of the person having the custody thereof.

(2.) That he opened, embezzled, or destroyed any such mail, letter, or packet containing an article of value.

(3.) Or, by fraud or deception, obtained from any person having custody thereof any such mail, letter, or packet, containing such article of value.

As the verdict was general upon all the counts, which are conceded to be sufficient in form, if any one of the counts was sustained by competent testimony, the verdict must stand. *Claassen* v. *United States,* 142 U. S. 140; *Evans* v. *United States,* 153 U. S. 584.

1. The main contention of the defendant is that the Muldoon letter was not a letter in point of fact, inasmuch as it was not only a decoy, that is, not written in good faith as a message or communication to the person addressed, but was wholly fictitious; that there was no such person as John Muldoon, no such place as 153 Ziegler Street, and the letter could not possibly have been delivered.

That the fact that the letter was a decoy is no defence is too well settled by the modern authorities to be now open to contention. *King* v. *Egginton,* 2 Bos. & Pull. 508; *United States* v. *Foye,* 1 Curtis, 364; *United States* v. *Cottingham,* 2 Blatchford, 470; *Bates* v. *United States,* 10 Fed. Rep. 92, 97; *United States* v. *Whittier,* 5 Dillon, 35, 39; *United States* v. *Moore,* 19 Fed. Rep. 39; *United States* v. *Wight,* 38 Fed. Rep. 106; *United States* v. *Matthews,* 35 Fed. Rep. 890, 896; *United States* v. *Dorsey,* 40 Fed. Rep. 752. Indeed, this court held at the last term, in *Grimm* v. *United States,* 156 U. S. 604, that the fact that certain prohibited pictures and prints were drawn out of the defendant, by a decoy letter written by a government detective, was no defence to an indictment for mailing such prohibited publications.

The question whether a letter addressed to a fictitious person, known to be such, is a letter within the meaning of the statute, is more serious, and there are certainly authorities which lend support to the theory of the defendant in that regard. Thus in *Regina* v. *Rathbone,* 1 Car. & M. 220, a detective mailed a decoy letter, containing a marked sovereign, to a fictitious address in London, and placed it in a heap of

letters which the prisoner was about to sort, and which he had to deliver that day. The letter was not delivered, and, in the course of the same day, the prisoner was arrested and searched, and the marked sovereign found in his pocket. It was held that this was not a "post letter," or a letter put into the post; but as there was a separate count for the larceny of the sovereign, he was held to have been properly convicted of that. A similar ruling was made in *Regina* v. *Gardner*, 1 Car. & K. 628, wherein the prisoner was held to have been properly convicted of the larceny of certain marked money contained in a letter which was addressed to a fictitious person, the court adhering to its previous ruling that it was not the stealing of a post letter.

The authority of these cases, however, was seriously shaken by that of *Regina* v. *Young*, 1 Den. Cr. Cas. 194. In that case the letter contained a half sovereign, and was addressed to a fictitious person. The prisoner, instead of transmitting the letter to the general post office, abstracted it from the receiving box, opened it, took out the half sovereign, and kept both the letter and the money. It was held to be a post letter, having all the ingredients under the statute, and "whether it can be delivered or no seems beside the question." On the Gardner case being cited, Pollock, Chief Baron, said he had seen reason to think his dictum in that case was incorrect, and the judges were unanimously of the opinion that the conviction was right.

The question has been generally ruled in the same way in this country. *United States* v. *Foye*, 1 Curtis, 364; *United States* v. *Wight*, 38 Fed. Rep. 106; *United States* v. *Dorsey*, 40 Fed. Rep. 752; *United States* v. *Bethen*, 44 Fed. Rep. 802.

If the word "letter" were given the technical construction of a written message or communication from one person to another, it would strike at the whole system of decoy or test letters, none of which contain *bona fide* communications. This would render it practically impossible to detect thefts and embezzlements by employés, since, in a large majority of cases, the letters and their envelopes are thrown away or

destroyed for the very purpose of preventing their being identified in case the employé is arrested; and the contents of the letter, which it is ordinarily impossible to identify, only are abstracted. If, however, the contents can be identified, as they always are in test letters, by a private mark put upon them, the discovery of such contents upon the person of the employé affords almost conclusive evidence of the theft of the letter in which they are enclosed.

It makes no difference with respect to the duty of the carrier, whether the letter be genuine or a decoy, with a fictitious address. Coming into his possession as such carrier, it is his duty to treat it for what it appears to be on its face — a genuine communication; to make an effort to deliver it, or, if the address be not upon his route, to hand it to the proper carrier, or put it into the list box. Certainly he has no more right to appropriate it to himself than he would have if it were a genuine letter. For the purposes of these sections a letter is a writing or document, which bears the outward semblance of a genuine communication, and comes into the possession of the employé in the regular course of his official business. His duties in respect to it are not relaxed by the fact or by his knowledge that it is not what it purports to be — in other words, it is not for him to judge of its genuineness.

2. The question whether this letter " was intended to be conveyed by mail, or carried or delivered by any mail carrier, mail messenger, route agent, letter carrier, or other person," etc., does not properly arise at this stage of the case, since, under § 5469, it is only necessary to show that the article embezzled or taken was a letter or packet properly deposited, etc., the subsequent limitation of the prior section with respect to the intention of the party mailing the letter being omitted here. Whether the court erred in refusing the defendant's request in that particular, therefore, becomes immaterial, in view of the last four counts, which are drawn under § 5469, and contain no allegation that the letter in question was intended to be conveyed by mail or carrier. Indeed, it is somewhat doubtful whether it could be material at all in view of

§ 5468, declaring that the fact that any letter, etc., has been deposited in any post office or branch post office, or in charge of any agent of the postal service, shall be evidence that the same was "intended to be conveyed by mail" within the meaning of § 5467. Had defendant been convicted under the first three counts and acquitted under the last four, of course the objection might be material; but where a general verdict of guilty is rendered, an objection taken to evidence admissible under one or a part of the counts is untenable.

3. Was there competent evidence to show that the letter was deposited in any mail or post office, branch post office, or other authorized depository for mail matter, within the meaning of § 5469? If, to meet the requirements of this section, it were necessary to show that the letter was deposited in one of the ordinary boxes accessible to the public and used for the reception of letters regularly mailed, the evidence is obviously insufficient, since it is shown that McGrath, in mailing this letter, passed by the place where letters were usually mailed, entered the back room of the office, where letters were sorted, and put this letter into Goode's box. This was clearly sufficient to charge Goode with the duty of delivering or attempting to deliver, the letter, and it makes no difference that, before it was put into this box, it did not go through the usual channel or reach it in the ordinary way. The term "branch post office," within the meaning of the act, includes every place within such office where letters are kept in the regular course of business, for reception, stamping, assorting, or delivery. Of course, a letter thrown upon the floor, or laid upon a desk appropriated to other and different purposes, could not be said to have been deposited in the post office; but if it be put in any place where letters are usually kept or deposited for any purpose, we think it is within the act.

4. While there was no direct evidence that this branch post office was established by authority of the Postmaster General, there was evidence that it was known as the Roxbury station of the Boston post office, had been used as such for years, and that it was a post office *de facto*. For the purposes of this case, it was quite unnecessary to show that it had been regu-

larly established as such by law. *Ingraham* v. *United States*, 155 U. S. 434; *Wright* v. *United States*, 158 U. S. 232.

The judgment of the court below is, therefore,

*Affirmed.*