### UNITED STATES v. PAPPAGODA.

(District Court, D. Connecticut. February 23, 1923.)

No. 2552.

1. **Criminal law ⊚⇒278(1), 824(4)—Indictment and information ⊚⇒137(1)—. Defense of entrapment not properly made by plea in abatement or motion to quash, but should be made by request for instructions.**

The defense of entrapment is not properly presented by plea in abatement or motion to quash the indictment on the ground that it was based on evidence disclosing the entrapment, but should be made on the trial by request for instructions.

2. **Criminal law ⊚⇒37—Facts held not to show illegal entrapment.**

Where a confessed drug addict told officers he knew where he could obtain drugs, the fact that the officers gave him a marked bill, followed him until he joined defendant, and arrested defendant after seeing him hand over a package, finding on him the marked bill and on the addict a package of drugs, which he claimed to have bought from defendant, held not to constitute an illegal entrapment.

3. **Criminal law ⊚⇒37—Aiding in commission of crime is not entrapment where criminal intent is that of accused.**

When the criminal intent originates in the mind of the accused, and the criminal offense is completed, the fact that the opportunity is furnished, or that accused is aided in the commission of the crime, in order to secure evidence against him, constitutes no defense.

Criminal prosecution by the United States against Matthew Pappagoda. On plea in abatement and motion to quash indictment. Motion denied, and plea overruled.

George H. Cohen, Asst. U. S. Atty., of Hartford, Conn.
Arthur B. O'Keefe, of New Haven, Conn., for defendant.

THOMAS, District Judge. The accused has been indicted by the grand jury and is charged in two counts with violating sections 2 and 8, pp. 785, 786, 789, of 38 Stat. at Large (Comp. St. §§ 6287h, 6287n), which is commonly known as the Harrison Act. The first count.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

charges possession of a certain quantity of opium, morphine, and cocaine, and the second count charges a sale to one Joseph Gaines of New Haven.

To this indictment the accused has filed a plea in abatement and a motion to quash the indictment, in which he alleges as follows:·

"(1) That during the hearing before the grand jury, while it was deliberating and considering the indictment, and before the same was ultimately found against this defendant, there appeared several witnesses whose testimony against this defendant was the result of a conspiracy inspired and instigated by officers of the law against this defendant, to persuade and cause him to violate the law, and which witnesses by their illegal testimony induced the said grand jury to find said true bill, and said witnesses were mainly instrumental in inducing said grand jury to find said true bill against this defendant, and returned said true bill against him.

"(2) That the indictment herein has no legal foundation to support it and that the same is wholly or largely founded upon illegal and incompetent evidence given before said grand jury, and upon evidence the admission of which before said grand jury was prohibited by law, and said indictment is without any legal evidence warranting the finding thereof against this defendant, and said grand jury, in finding said indictment, was governed and controlled wholly or in part by such alleged illegal, unlawful, and prohibited evidence, and said indictment is founded upon illegal and incompetent evidence."

It will thus be noted that the accused bases his right to relief on the ground of entrapment. The facts surrounding the transaction which led to the arrest and indictment have been stipulated as follows:

"On May 23, 1922, at about 12 o'clock noon, Officers Cole, Reynolds, and McLaughlin arrested one Joseph Gaines for begging at Ashman street between Henry and Admiral streets, New Haven, Conn. They took him to Grand Avenue police station, and after questioning Gaines he admitted that he was a drug addict and that he knew where he could buy narcotics. The officers then marked a $1 bill and took dates on four dimes and two nickles. Gaines took this money, at the request of the officers, and walked down to Franklin and Green streets, where he was met by Pappagoda. The latter walked up Green street to Hamilton street, with Gaines following him. After a few moments he disappeared for a short time, but presently was seen to join Gaines again. The officers observed Pappagoda hand something to Gaines. Pappagoda then left Gaines and entered the rear of 110 Green street, which is on the Hamilton street side, closely followed by Officers Reynolds and Cole. As Pappagoda was going up the steps leading to the house, he was seized by Officer Reynolds, and at the same time he dropped a $1 bill, the dropping of which was observed by Officers Reynolds and Cole. The bill that Pappagoda dropped later proved to be the bill marked by the officers in the station house and used by Gaines.

"Gaines, who was also apprehended, gave the officers a paper containing morphine and one containing cocaine that he claimed he purchased from Pappagoda at Green and Hamilton streets, and for which he gave Pappagoda the $1 bill, four dimes, and two nickels that had been marked in the station house."

[1] The procedure which the accused followed is unusual and unique, and no precedent has been presented upon which, at this time, such a motion can be granted or such a plea be sustained. The proper procedure, as suggested by all the cases, where the defense of entrapment is interposed, is for the accused to request the court to charge the jury with respect to the law governing entrapment. In the

absence of such a request to charge the jury, or even the failure of the court to so charge, error may then be predicated upon such refusal or failure, of which error the accused may take full advantage before the appellate court.

[2] The motion might properly be denied, and the plea dismissed at this time; but the question comes up so frequently in this district that I deem it advisable to dispose of the questions here raised in order that there may be a clear understanding respecting the law regarding the defense here interposed, since the question has been presented upon the stipulation. It seems to me that there is nothing upon which the defense can defeat the prosecution upon the theory of entrapment. It is true that the accused was entrapped by the action of the government agents in inducing Gaines to purchase narcotics from the accused; but this does not necessarily indicate that the government officers lured the defendant, or incited or induced him to do what he would not have done, in the absence of the actions of the government agents. The important element lacking in this case, as distinguished from all cases cited and relied upon, is that it does not appear that the defendant would not have sold and was not selling to any one whom he knew who applied for narcotics with the ability to pay. Still more significant is the fact that the actions of the government agents in no way accounted for the fact that the defendant had the drugs in his possession.

An analysis of the cases cited and relied upon will sustain the conclusions already expressed. The defendant cites Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604; but there is no analogy between that case and the one under consideration. In the Woo Wai Case there was no evidence or indication that, prior to the approach of the government agent, that any of the defendants had ever been engaged in any unlawful importation of Chinese. The reason for remanding the case for a new trial was because the court found that the purpose was not to punish men suspected of crime, but to force from Woo Wai disclosures of facts concerning unlawful acts of others. The court differentiated that class of cases in which the criminal intent had its origin in the mind of the accused and those where the thought originated in the minds of the agents. On page 415 of 223 Fed. (137 C. C. A. 607) Judge Gilbert said:

"But it is to be said, by way of distinguishing such cases from the case at bar, that in all of those cases the criminal intention to commit the offense had its origin in the mind of the defendant."

In Butts v. United States, 273 Fed. 35, on page 38 (18 A. L. R. 143), which is strenuously urged by the accused in support of his contention, Judge Sanborn, speaking for the Circuit Court of Appeals for the Eighth Circuit, said:

"But when the accused has never committed such an offense as that charged against him prior to the time when he is charged with the offense prosecuted, and never conceived any intention of committing the offense prosecuted, or any such offense, and had not the means to do so, the fact that the officers of the government incited and by persuasion and representation lured him to commit the offense charged, in order to entrap, arrest, and prosecute him therefor, is and ought to be fatal to the prosecu-

tion, and to entitle the accused to a verdict of not guilty. Peterson v. United States, 255 Fed. 433, 166 C. C. A. 509; United States v. Echols (D. C.) 253 Fed. 862; Sam Yick v. United States, 240 Fed. 60, 65, 67, 153 C. C. A. 96; Voves v. United States, 249 Fed. 191, 192, 161 C. C. A. 227; Peoples v. McCord, 76 Mich. 200, 42 N. W. 1106, 1108; Woo Wai et al. v. United States, 223 Fed. 412, 414, 137 C. C. A. 604."

In this case the verdict of guilty was reversed, because, as appears on page 36 of 273 Fed. (18 A. L. R. 143), the trial court—

"denied a request of counsel for the defendant to instruct the jury that the defendant claimed that he was entrapped into delivering to Rudolph the morphine in question by the instigation of the government agents; that, had it not been for the importunities and false statements made by Rudolph pursuant to the directions of the government agents, who started out admittedly for the purpose of entrapping the defendant into the commission of the offense charged against him, he would not have conceived or committed it; and that if the jury believed from the evidence that the defendant was induced by the importunities of Rudolph, acting under the orders and in conjunction with the government agents, to violate the law, and that through the instigation of these men the defendant was induced to sell or deliver to Rudolph the morphine, and that he would not otherwise have violated the law, they ought to return a verdict of not guilty."

And on page 37 of 273 Fed. (18 A. L. R. 143), the learned court said:

"It is not denied that, in cases where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys or truthful statements to furnish opportunity for or to aid the accused in the commission of a crime, in order successfully to prosecute him therefor, constitutes no defense to such a prosecution. Price v. United States, 165 U. S. 311, 315, 17 Sup. Ct. 366, 41 L. Ed. 727; Grimm v. United States, 156 U. S. 604, 610, 15 Sup. Ct. 470, 39 L. Ed. 550; Goode v. United States, 159 U. S. 663, 669, 16 Sup. Ct. 136, 40 L. Ed. 297; Andrews v. United States, 162 U. S. 420, 423, 16 Sup. Ct. 798, 40 L. Ed. 1023; Fiunkin v. United States (C. C. A.) 265 Fed. 1."

The ruling in this case seems very clear and fully justifies the conclusion expressed supra.

In United States v. Echols (D. C.) 253 Fed. 862, the facts were entirely different from the facts here, and it was while the accused was in a state of partial intoxication that he was accused by a military officer, who intended to induce the commission of a crime. On page 862, Judge Hutcheson said:

"This rule does not proceed from or rest on any limitation of the right of the officers of the law to obtain evidence of crime in any manner possible, nor is it a defense to a prosecution that the officer participated in the commission of a crime, if the genesis of the idea, or the real origin of the criminal act, sprang from the defendant, and not from the officer; or, as the differentiation is well stated in 12 Cyc. 160: 'The fact that a detective or other person suspected that the defendant was about to commit a crime, and prepared for his detection, as a result of which he was entrapped in its commission, is no excuse, if the defendant alone conceived the original criminal design."

Voves v. United States, 249 Fed. 191, 161 C. C. A. 227, is another case where there was a conviction by the jury, which was reversed on the exceptions to the charge to the jury of the court below. Judge Baker, speaking for the Circuit Court of Appeals for the Seventh Circuit, said on pages 191 and 192 of 249 Fed. (161 C. C. A. 227):

"In the present case there was testimony which the jury might have accepted as establishing the following facts: Voves had not been selling or giving liquor to Indians; the government agents had no reason to suspect that he had been or would; Mexican railroad laborers had recently moved into the neighborhood; the Indian in question looked like a Mexican; he was a government decoy; he wore a black suit, white soft shirt, and black slouch hat; he came in and asked for liquor; Voves believed he was a Mexican; shortly he was followed by two white men, government detectives; as Voves was about to pass liquor to the decoy, one detective said to the other within the hearing of Voves, 'I didn't know Indians were allowed to get whiskey here;' whereupon Voves turned to them and said, 'Why, that man is a Mexican.' and none of the three said a word in denial; they stood by while Voves made the sale on which the indictment was predicated."

But the court took occasion to add (249 Fed. 192, 161 C. C. A. 228):

"Grant that the government may use a decoy to discover evidence of a committed crime of whatever nature; that, where one has the intent to commit a malum in se, or the willingness to do a malum prohibitum, a decoy may accompany the wrongdoer and even participate in the offense."

In Sam Yick et al. v. United States, 240 Fed. 60, 153 C. C. A. 96, there was another conviction by the jury, which was reversed on the exceptions taken by the defendant to the court's charge to the jury. The question as to who originated the idea of conspiracy received the attention of the court, and error was found on the theory stated on page 64 of 240 Fed. (153 C. C. A. 100). The court said:

"We see nothing in the foregoing testimony of Inspector Morse, nor in any other evidence in the record, tending to show that the idea of a conspiracy originated with Sam Yick. Taking the testimony to be true, the crime he committed was the attempted bribery of the government inspector to prepare false papers for the admission of Chinese persons not entitled to enter the country; and the scheme which culminated in the conspiracy alleged in the indictment to have been formed on the 24th of August, 1911, by the plaintiffs in error and other persons to the grand jurors unknown was, according to the evidence, devised by the officers of the law, and had its origin in the letter of Inspector Morse, of date May 8, 1911, to his superior officer."

And the court then, on page 65 of 240 Fed. (153 C. C. A. 101), lays down the same rule in the following language:

"And while it may be true that the mere aiding of one in the commission of a criminal act by a government officer or agent does not preclude the conviction of the party committing the crime, yet where the officers of the law have incited the party to commit the crime charged and lured him on to its consummation, the law will not authorize a verdict of guilty."

In Peterson v. United States, 255 Fed. 433, 166 C. C. A. 509, the defense was that the defendant was instigated by the officers to commit the crime of selling intoxicating liquor to a soldier in uniform. The trial court, in submitting the case to the jury, treated the question as a question of law, and the case was remanded for a new trial on the ground that the question as to whether or not the defendant was instigated to commit the offense by the officers was, from the testimony, a question of fact, which should have been submitted to the jury for its determination, with the suggestion that, if the jury found the defendant's claims in this respect true, it would be its duty to acquit.

And every other case cited by the defendant either has no application to the instant case, because the facts are in no way similar, or the court, in its opinion, takes occasion to reiterate the rule of law. The decisions are uniform in holding to the doctrine enunciated in Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550. Mr. Justice Brewer, on page 610 of 156 U. S. (15 Sup. Ct. 472, 39 L. Ed. 550), said:

"There has been much discussion as to the relations of detectives to crime, and counsel for defendant relies upon the cases of United States v. Whittier, 5 Dillon, 35; United States v. Matthews, 35 Fed. Rep. 890; United States v. Adams, 59 Fed. Rep. 674; Saunders v. People, 38 Michigan, 218—in support of the contention that no conviction can be sustained under the facts in this case. It is unnecessary to review these cases, and it is enough to say that we do not think they warrant the contention of counsel. It does not appear that it was the purpose of the post office inpector to induce or solicit the commission of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business. The mere facts that the letters were written under an assumed name, and that he was a government official— a detective, he may be called—do not of themselves constitute a defence to the crime actually committed. The official, suspecting that the defendant was engaged in a business offensive to good morals, sought information directly from him, and the defendant, responding thereto, violated a law of the United States by using the mails to convey such information, and he cannot plead in defense that he would not have violated the law if inquiry had not been made of him by such government official. The authorities in support of this proposition are many and well considered."

See, also, Jung Guey v. United States, 222 Fed. 766, 772, 138 C. C. A. 314.

In Rothman v. United States (C. C. A.) 270 Fed. 31, another case tried to the jury, Judge Rogers, on page 35, when referring to a situation similar to the one here involved, said:

"But in view of the Act of February 26, 1919, c. 48, § 269, 40 Stat. p. 1181 (Comp. St. Ann. Supp. 1919, § 1246), we will say concerning the instructions objected to in this court that the contention of the defendant's counsel is disposed of by what was laid down in Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550. It was there decided that when a government detective, suspecting that a person is engaged in an unlawful business seeks information under an assumed name directly from him, and that person responds thereto, violating a law of the United States, he cannot, when indicted for the offense, set up that he would not have violated the law, if the inquiry had not been made of him by the government official. A number of cases in the federal courts in support of the doctrine are cited in the opinion. See, also, Andrews v. United States, 162 U. S. 420, 16 Sup. Ct. 798, 40 L. Ed. 1023; United States v. Lynch (D. C.) 256 Fed. 983."

Fiunkin v. United States, 265 Fed. 1, is another case tried to the jury where claim of entrapment was made. The facts were very similar to the facts in the instant case and what was said there applies with like force here. Speaking for the Circuit Court of Appeals for the Ninth Circuit, Judge Wolverton said, on page 2:

"It is argued that the defendant was induced, through the machinations and instigation of the government officers, to commit the offense, or, in other words, that he was entrapped by such contrivance of the officers to do the thing which the law condemns. The evidence fails to show, however, that such was the case. The officers had nothing to do with the defendant's

having the drugs in his possession. They had nothing to do with his willingness to sell the same for a consideration. They had nothing whatever to do with the conditions that prevailed prior to the time they sent the addict to the store to make the purchase, nor with the defendant's state of mind or purpose of action, should opportunity present itself, of dealing with the drug as a commodity for sale to those who were willing to buy. Nor did they offer any inducement to the defendant to sell, except that they did, through Collins, offer to buy, and proffered the amount of money that defendant fixed as the price he was willing to take. Nothing beyond this appears in the testimony. It is true that the defendant was entrapped by what was done to sell the drug to the government officers, and to put himself in a position of yielding up evidence of his commission of the offense. But this does not signify that the government officers lured him, or incited or induced him, to do what he would otherwise have done, if any other addict had applied to him to purchase the drug. The case is not different from those where decoy letters have been sent through the mails to ascertain whether parties are indulging in unlawful practices. Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550, is a case where such a decoy letter was sent through the mail under an assumed name, and was answered, also through the mail, giving the information requested. Defendant was indicted for unlawful use of the mails in giving the information, and the court held him guilty of the offense, notwithstanding the officers of the government thus participated in inducing him to write and post the offending letter. Other authorities are to the same purpose. Goode v. United States, 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297; Andrews v. United States, 162 U. S. 420, 16 Sup Ct. 798, 40 L. Ed. 1023. These authorities are decisive of the question presented. There was no error in the court's refusal to direct a verdict for acquittal."

[2, 3] Thus it clearly appears that the defendant's position on this motion and plea are untenable, as matter of law as the stipulated facts do not bring the defendant within the ruling of the cases cited. If this prosecution was against Gaines, the situation would be different. The government agents did induce Gaines to purchase narcotics, but there is nothing in the agreed statement of facts to show that they induced Pappagoda to commit any offense that he had not already committed or did not have the intention to commit, or was not fully able to commit. It would be a sad commentary on the law, if its officers were barred from receiving or soliciting such assistance as might be necessary to aid in detecting criminals while engaged in criminal pursuits. There are bounds beyond which no officer, in his zeal to make an arrest or secure a conviction, should go; but when the criminal intent originates in the mind of the accused, and the criminal offense is completed, the fact that an opportunity is furnished, or that the accused is aided in the commission of the crime, in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. To the argument that the act is done at the instigation or solicitation of an agent of the government, the answer is that the intent of the detective is not to solicit the commission of the offense, but to ascertain whether or not the defendant is engaged in an unlawful business.

The motion is denied, and the plea is overruled. So ordered.