## ROTH v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1923.)

### No. 3877.

1. **Post office ⊂⇒42—Use of decoy letter to identify criminal employé justified.**
   If postal officials have reasonable ground to believe that mail matter is being stolen by a post office employé, the use of a decoy letter to identify the culprit is proper.

2. **Post office ⊂⇒41—General statute as to stealing mail matter applicable to employés.**
   Criminal Code, § 194 (Comp. St. § 10364), making it an offense for any one to steal, secrete, or embezzle mail matter, is applicable to postal employés, and an indictment against an employé, though drawn under section 195, may be treated as under section 194.

3. **Indictment and information ⊂⇒9—Indictment may be found pending preliminary examination.**
   The fact of the pendency of proceedings for preliminary examination of an accused before a commissioner does not prevent the consideration of the case by the grand jury, and the presentment of an indictment by them for the same offense.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Constitutional law ⊜⇒106—Courts ⊜⇒337—One arrested by federal officers has no vested right to preliminary examination.**

The provision of Rev. St. § 1014 (Comp. St. § 1674), for proceeding against a person charged with an offense against the United States, "agreeably to the usual mode of process against offenders in such state," applies only where the arrest is made by state authorities, and not to procedure in the federal courts, and does not give an offender arrested by federal officers a vested right to a preliminary examination.

**5. Post office ⊜⇒49—Evidence of reason for mailing decoy letter held competent.**

Where postal officials mailed a decoy letter, and later defendant, an employé, was arrested for stealing it and its contents, testimony of an inspector that thefts in the office had been reported to him, and that it was in consequence of such information that the letter was mailed, *held* competent.

**6. Criminal law ⊜⇒778(2)—Instructions held not erroneous, as lessening the burden of proof resting on the prosecution.**

Instructions *held* not erroneous, as tending to relieve the prosecution of the burden of proving guilt beyond a reasonable doubt, with respect to an affirmative defense.

**7. Criminal law ⊜⇒1038(3), 1056(1)—Instructions not reviewable, in the absence of exceptions, or requests to charge.**

A charge is not reviewable as to matter which was not excepted to, and upon which no further instruction was requested.

**8. Criminal law ⊜⇒762(2)—Judge may express opinion on the merits.**

A trial judge has the right to express his opinion on the merits, provided the jurors are clearly given to understand that they are to exercise their independent judgment.

**9. Criminal law ⊜⇒1159(2)—Appellate court cannot weigh the evidence.**

The appellate court cannot determine the weight of evidence.

In Error to the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Criminal prosecution by the United States against Joseph A. Roth. Judgment of conviction, and defendant brings error. Affirmed.

P. J. Mulligan, of Cleveland, Ohio (Bartholomew, Leeper & McGill, of Cleveland, Ohio, on the brief), for plaintiff in error.

M. A. McCormack, Asst. U. S. Atty., of Cleveland, Ohio (A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error (hereinafter called defendant) was convicted under an indictment charging him, while employed in the United States post office at Cleveland, Ohio, with stealing and removing from a certain letter $3.50 in currency and coin, with intent to convert the same to his own use; the indictment alleging that the letter and its contents had been intrusted to defendant, and had come into his possession as such postal employé, and that it and its contents were intended to be conveyed by mail. The letter was a "decoy" or test letter, the address being fictitious. The postal officials who prepared the letter, and caused it to be introduced into the post office, did not expect or intend that the letter would be conveyed by mail beyond the Cleveland post office, but intended that it should be by them intercepted therein, if not stolen while in that office.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] We think the trial court did not err in overruling the motion, made at the close of the evidence, for directed verdict for defendant, because the addressee was fictitious and the letter not intended to be conveyed beyond the post office. If, as the testimony tended to show, the postal officials had reasonable ground to believe that mail matter was being stolen by a post office employé, the use of a decoy letter to identify the culprit was proper. Grimm v. United States, 156 U. S. 604, 609, 610, 15 Sup. Ct. 470, 39 L. Ed. 550; Montgomery v. United States, 162 U. S. 410, 16 Sup. Ct. 797, 40 L. Ed. 1020; Goldman v. United States (C. C. A. 6) 220 Fed. 57, 62, 135 C. C. A. 625. However, section 195 of the Penal Code (Comp. St. § 10365), which was in the mind of the one drafting the indictment, provides that:

"Whoever, being a postmaster or other person employed in any department of the postal service, shall unlawfully detain, delay, or open any letter, * * * or mail intrusted to him or which shall come into his possession, and which was intended to be conveyed by mail, * * * or shall steal, abstract, or remove from *any such* letter, * * * or mail, any article or thing contained therein, shall be" punished, etc.

This section is substantially a re-enactment of R. S. § 5467, except that under that section the offenses of secreting, embezzling or destroying letters, etc., containing inclosures were limited to those intended to be conveyed by mail, etc., while the offense of stealing by an employé from letters or mail was not so limited.

The Supreme Court has held, not only that under the last clause of R. S. § 5467, it was not necessary that the letter whose contents were stolen was intended to be delivered (Goode v. United States, 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297; Hall v. United States, 168 U. S. 632, 639, 18 Sup. Ct. 237, 42 L. Ed. 607), but that under the first clause of section 5467, relating to letters intended to be conveyed by mail, the intention to so convey "is sufficiently proved * * * by evidence of the delivery of a letter into the jurisdiction of the Post Office Department by dropping it in a letter box" (Scott v. United States, 172 U. S. 343, 350, 19 Sup. Ct. 209, 211 [43 L. Ed. 471]). True, in that case the court cited R. S. § 5468, which makes the depositing in any post office or other authorized depository for mail matter "evidence that the same was 'intended to be conveyed by mail' within the meaning of the two preceding sections," and section 5468 was repealed and not re-enacted in connection with the adoption of the Penal Code. Act March 4, 1909, c. 321, 35 Stat. 1125. It is perhaps not clear from the Scott Case that without the aid of R. S. § 5468, a letter duly stamped and deposited in the post office, and intended to be conveyed, so far as the employé's duty was concerned, would not be within the first clause of section 5467. In Hall v. United States, supra, 168 U. S. at page 637, 18 Sup. Ct. at page 239 (42 L. Ed. 607), a somewhat similar question was passed as unnecessary to decision. And see Goode v. United States, supra, 159 U. S. at page 671, 16 Sup. Ct. at page 138 (40 L. Ed. 297). The Circuit Court of Appeals of the Eighth Circuit, citing the Supreme Court decisions hereinbefore referred to, and without discussion, has held that decoy letters addressed to fictitious persons, placed in the mails by post office inspectors, so as to be carried over the route of a suspected railway mail clerk, and intended to be

removed from the mails at the end of the route without being carried to the place of address, are letters intended to be conveyed by mail, within section 195 of the Penal Code. McShann v. United States, 231 Fed. 923, 925, 146 C. C. A. 119.

[2] However, R. S. § 5469, which provided a similar punishment for the stealing, secreting, or embezzling of mail matter by any one, was held to apply to a theft by a letter carrier from the mail, and not to require a showing that the letter "was intended to be conveyed by mail," etc. Goode v. United States, 159 U. S. at pages 668–671, 16 Sup. Ct. at pages 136, 138 (40 L. Ed. 297). So far as pertinent here, section 194 of the Penal Code (Comp. St. § 10364) is substantially a re-enactment of R. S. § 5469, and of course must receive the same construction given section 5469. The acts charged in the indictment here being sufficient to constitute an offense under section 194, the reference in the indictment to section 195 does not prevent consideration of the case as under section 194. Biskind v. United States (C. C. A. 6) 281 Fed. 47, 49, 50 (certiorari denied, 260 U. S. 731, 43 Sup. Ct. 93, 67 L. Ed. ——). The allegation of intent to convey by mail will be regarded as surplusage.

[3] Defendant was first arrested on warrant issued by a United States commissioner; defendant thereupon demanding a preliminary examination and giving bond for appearance thereon. Before the date to which the commissioner's proceeding was adjourned, the indictment here was found by the grand jury, without preliminary action by or hearing before a commissioner. We think the court rightly overruled defendant's motion to quash the indictment because of the facts stated. Defendant could not be held for trial without indictment by grand jury, which had the right to consider the alleged offense and make presentment thereon, notwithstanding the pendency of proceedings before a commissioner, and even if other indictments were pending for the same cause, or even if an indictment had previously been refused. United States v. Thompson, 251 U. S. 407, 412, et seq., 40 Sup. Ct. 289, 64 L. Ed. 333; Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652; Thompson v. United States (C. C. A. 9) 202 Fed. 411, 120 C. C. A. 575, 47 L. R. A. (N. S.) 206; Blair v. United States, 250 U. S. 273, 39 Sup. Ct. 468, 63 L. Ed. 979. And compare Yaffee v. United States (C. C. A. 6) 276 Fed. 497.

[4] We think the provision in R. S. § 1014 (Comp. St. § 1674), for an arrest by state judicial officers "agreeably to the usual mode of process against offenders in such state," applies only to state procedure for arrest, imprisonment, or bail, and not to procedure in the federal courts, and that defendant obtained no vested right to a preliminary examination before a commissioner. Cf. United States v. Kerr (D. C.) 159 Fed. 185; United States v. Powlowski (D. C.) 270 Fed. 285.

[5] We also think no error was committed in the introduction of testimony of a government inspector that losses or tampering with mail matter in the Cleveland post office had been brought to his attention previous to the preparation of the decoy letter, and that such letter was prepared in consequence thereof. Such testimony was relative to the subject of "entrapment," whose effect depends largely upon whether

or not the officers of the law had reason to believe that a crime was being committed. Partan v. United States (C. C. A. 9) 261 Fed. 515; Billingsley v. United States (C. C. A. 6) 274 Fed. 86, 89, and cases there cited. We also think there was no error in permitting the inspector to testify that:

"When the special delivery stamp was removed by me, it left a blot, a blur on the envelope, and I remarked that on several occasions how plain we could follow that letter after seeing it from the lookout down to the case."

Whether by the word "remarked" the witness meant "noticed" or "commented to others" upon the fact does not appear. We think the expression "on several occasions" related to the time the inspectors and post office clerk were watching from the lookout, as hereinafter referred to, and such seems to have been the understanding had by the trial judge. It is fundamental that, in confirmation of an alleged occurrence or appearance, a witness may state, not only that he specially observed it at the time, but also that he then called the attention generally of others thereto. But, if our construction of the meaning of the testimony is incorrect, we think no reversible error was committed.

This further statement is necessary to a consideration of the criticisms upon the court's charge: The test letter is said to have contained three $1 bills and a 50-cent silver coin, all marked for identification. According to the Government's testimony, after the superintendent of mails at the Cleveland post office had placed the letter where it would naturally come into defendant's hands, and after the two post office inspectors and a clerk in the Cleveland post office had from the lookout seen the letter come into defendant's hands and then pass from view, defendant was called to the inspectors' room in the post office building. He was there told that the inspectors were tracing a valuable letter and had information that it was last seen in defendant's possession. Defendant denied any knowledge of the letter. In response to the inspectors' request that he show the money he had on his person, defendant placed on the desk several pieces of coin, among which, as testified by the inspectors, they recognized the 50-cent piece in question, and so told the defendant. Later defendant, under protest, removed his outer clothing, and in that connection took from his pocket a quantity of paper currency, which did not include the bills in question. Still later a city detective was sent for, and, after making a further search of defendant's person, proceeded to search the room, and on taking off the top of a cuspidor found the three $1 bills therein, folded up and wet from the contents of the cuspidor, which then stood in front of a desk in the inspectors' room, having previously been back of the desk and near a wall; it having been, as testified, about four hours before the discovery of the bills therein brought to its then location by the assistant superintendent of mails. It appeared that all, or nearly all, in the room smoked or chewed tobacco during the session in the inspectors' room. There was testimony that in the course of the meeting defendant had several times deposited cigar ashes in the cuspidor.

Defendant denied that the 50-cent piece picked up by the inspectors from the desk had been contained in the test letter, and denied all knowledge of or connection with the paper money. He was unable to

account for the presence of either the silver or the bills, except on the theory that an enemy was responsible, stating that, as president of the postal clerks' union in Cleveland, he had protested both personally to the Postmaster General and otherwise about conditions in the Cleveland post office. In effect, he claimed to be the victim of a "frame-up." It was the undisputed testimony that the assistant superintendent of mails had not been in the inspectors' room from the time the test letter was said to have been traced into defendant's possession until after the 50-cent piece is alleged to have been discovered; he having meanwhile, as testified, found by examination that the test letter was not included in the package tied up by defendant for transmission to the post office named in the address on that letter. There was also testimony that the Cleveland post office clerk referred to was not in the inspectors' room after the test letter was mailed. On the trial defendant testified to his innocence, and presented the testimony of several witnesses to his good character and good reputation for honesty and integrity. If the government's witnesses throughout were believed, defendant's conviction would seem naturally and logically to follow. If defendant were innocent, a conclusion that there was a "frame-up" between two or more of the government's witnesses would seem equally logical and natural.

[6] The judge submitted to the jury the respective contentions of the defendant and the government, including the questions whether the decoy letter was prepared, the money marked and placed therein, and memorandum made thereof, as claimed; whether the letter was placed in the mails; if the coin was in the letter, how it got back to the inspectors' room; and, in that connection, asked the jury whether it was a reasonable hypothesis that the assistant superintendent of mails, instead of mailing the letter, himself destroyed it and took out the money, and, while the inspectors and the postal clerk were watching defendant (presumably from the lookout), went to the inspectors' room and placed the bills in the cuspidor and the 50-cent piece on the table; or whether that assistant superintendent, as the result of some collusion or conspiracy with one or both of the inspectors, slipped the money back again to one or the other of them. The court then stated that, in order to assume that explanation of what happened to the letter, it was necessary to find or believe it reasonable that the two inspectors, the superintendent of mails "and probably also Winters" (the postal clerk), "not only from the witness stand here committed the most atrocious perjury, but that they corruptly, criminally, designedly, and intentionally framed up a conspiracy against the defendant," adding:

"Now, if you believe under the evidence that they did, if you believe that is a reasonable hypothesis which will explain the evidence here of the presence of the coin and the dollars back there afterwards, you should return a verdict of not guilty."

This instruction is criticized, first, as making it necessary to acquittal that all four of the witnesses be engaged in the conspiracy; and, second, in effect, as we understand it, as not placing on the government the burden of showing beyond a reasonable doubt the incorrectness of defendant's hypothesis. We think neither of these criticisms justified.

As a practical proposition, we think defendant's acquittal would necessarily involve a conclusion of conspiracy between at least three of the four witnesses mentioned, and not improbably all four. The case should not be reversed merely because the judge thought that such conspiracy would involve at least three, instead of at least two, of the witnesses. Whatever might be the effect, standing alone, of the concluding sentence of the paragraph quoted, we think it clear that, considered in connection with the charge as a whole, it could not reasonably be construed as contended by defendant. Not only did the court, in the earlier part of the charge, explicitly place the burden upon the government of proving defendant's guilt beyond a reasonable doubt, but in connection with the first reference to defendant's suggested theories of a frame-up, said:

"That is one of the theories and hypotheses which it is necessary for you to determine under the evidence whether it is overcome beyond a reasonable doubt; and the evidence must not only overcome all of these presumptions and hypotheses, but any other reasonable hypothesis which presents itself to you."

And the very last statement in the charge was that:

"If, on the other hand, the evidence does not satisfy you beyond a reasonable doubt that the defendant is guilty, if this evidence does not overcome beyond a reasonable doubt, the presumption of innocence with which he is clothed; if this evidence does not overcome beyond a reasonable doubt all of the reasonable hypotheses or explanations brought forward on his behalf, then you should return a verdict of not guilty, regardless of any consequences."

After stating that the defendant's plea of not guilty raises a presumption of innocence in his favor, and that defendant substantiated that presumption by the evidence of witnesses called to testify that he is a man of good character, so far as honesty and integrity at least are concerned, and that prior to this transaction he enjoyed a good reputation for honesty and integrity with them, and among persons that knew him, the court made the statement which we quote in the margin.[1] The

---

1 "That is evidence in his favor, and is to be weighed by you for what, in your judgment and opinion, it is worth. Its weight is to be determined by you, just as is the weight of any other item or scrap of evidence. As a matter of law, a man of good character is just as guilty as a man of bad character, if he has in fact committed a crime. Morally it may be a greater offense for a man of good character to have committed an offense than for a person who has not enjoyed the same opportunities and has not had the same favorable surroundings in life. Obviously, any one who commits a crime must commit a first crime. Obviously, any one who is charged with a crime and put on trial must be charged with it for the first time. But, notwithstanding these observations, the inference is permitted, and it may be justified, that a person of good character, honesty, and integrity is not as likely to commit a crime which is not in accordance with that character as one who does not have such a character. Hence it is that it is evidence, and it has weight; but that weight, as I say, is a matter to be determined by you under all the facts and circumstances in the case. In some cases it might be substantial. * * * And so, I say, gentlemen and ladies, that the weight to be given to the character of a defendant in a criminal case, good character is a matter depending upon all the circumstances to be weighed and tested by you; for what it is worth, under all the circumstances of this case, you are to weigh it."

omission indicated by asterisks is of uncriticized illustrations made by the court.

The criticism is made of this part of the charge that, from the reference to the character evidence as "an item, or scrap of evidence," and what followed the same, the plain inference for the jury was that defendant, with a good reputation and character, has morally committed a greater offense than a man of bad character, had it been committed by the latter, and that "the unavoidable inference for the jury was that Roth committed the crime." We think this construction unfounded.

[7] Defendant urges here that evidence of good character is substantive proof, and, even alone, may be sufficient to produce an acquittal by the creation of a reasonable doubt, and that the charge disparaged the defense of good character, and clearly gave the impression that defendant's testimony in that respect was not substantial. As has already appeared, the court stated that defendant's evidence of good character substantiated the presumption of innocence. It is true that defendant would have been entitled, had he so requested, to an instruction that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt, and that the circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt. Edgington v. United States, 164 U. S. 361, 366, 17 Sup. Ct. 72, 41 L. Ed. 467. The charge as given, however, contains no actual misstatement of the law. Defendant not only failed to ask any further or other instruction, but did not even except to the charge as given upon the subject of good character; thus suggesting that the charge did not at the time convey an impression that it was either incomplete, inaccurate, or unfair, especially in view of the fact that specific exceptions were taken to several other features of the charge. Defendant is thus not entitled as of right to a review of the charge in the respect we are considering. Schoborg v. United States (C. C. A. 6) 264 Fed. 1, 10; Sylvia v. United States (C. C. A. 6) 264 Fed. 593, 595; Rosen v. United States (C. C. A. 2) 271 Fed. 651, 653; Fisk v. United States (C. C. A. 6) 279 Fed. 12, 15; Robilio v. United States (C. C. A. 6) 291 Fed. 975, 980, 981. And we are not impressed that the case is such as to justify waiver of the rule requiring exception or request for further instructions.

[8] We are unable to say that the charge, considered all together, was unfair to defendant, either by way of disparaging the defense of good character or otherwise. Defendant's denial of guilty knowledge, and his assertions of complete innocence, were set out in detail. The trial judge had the right plainly to express to the jury his opinion upon the merits, provided the jurors be given clearly to understand that they were not bound by the judge's opinion, but were free to exercise their own judgment,[2] and subject to the further qualification that the

[2] Rucker v. Wheeler, 127 U. S. 85, 93, 8 Sup. Ct. 1142, 32 L. Ed. 102; Allis v. United States, 155 U. S. 117, 123, 15 Sup. Ct. 36, 39 L. Ed. 91; Graham v. United States, 231 U. S. 474, 480. 34 Sup. Ct. 148, 58 L. Ed. 319; Horning v. District of Columbia, 254 U. S. 135, 138, 139, 41 Sup. Ct. 53, 65 L. Ed. 185; Sylvia v. United States (C. C. A. 6) 264 Fed. 593, 596; Calcutt v. Gerig (C. C. A. 6) 271 Fed. 220, 224.

comments be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of the fact, be left free to exercise their independent judgment; in other words, that their judgment be not coerced.[3]

While we have not discussed exceptions to the charge not argued in brief, we are not satisfied, upon a consideration of the charge in full, that the judge failed to observe the qualifications above referred to, either in respect to analysis of testimony or otherwise. While he did not in terms state his opinion upon the merits, and said he did not intend to do so, he clearly stated that the jurors were the sole and exclusive judges of the weight of the evidence and of the credibility of witnesses, and that they should be uninfluenced by any comments or expressions on his part.

[9] The defendant may have been wholly innocent of the crime of which he was convicted, but there was ample and substantial evidence which, if believed, justified conviction. We cannot weigh the evidence (Burton v. United States, 202 U. S. 373, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Kelly v. United States [C. C. A. 6] 258 Fed. 392, 169 C. C. A. 408), and we are unable to conclude that the court below has denied defendant a fair and impartial trial.

The judgment must accordingly be affirmed.

---

[3] Starr v. United States, 153 U. S. 614, 626, 14 Sup. Ct. 919, 38 L. Ed. 841; Sandals v. United States (C. C. A. 6) 213 Fed. 569, 573, 130 C. C. A. 149; Shaffer v. Grain Co. (C. C. A. 6) 271 Fed. 820, 824; Tuckerman v. United States (C. C. A. 6) 291 Fed. 958, 965.