UNITED STATES, Appellee

v

THEODORE R. WATKINS, Private First Class,
U. S. Army, Appellant

11 USCMA 611, 29 CMR 427

No. 13,681

Decided July 8, 1960

*Major Edward Fenig* argued the cause for Appellant, Accused. With him on the brief was *First Lieutenant James G. Garner*.

*First Lieutenant Barry L. Kroll* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. Mc-Conaughy*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to having stolen $116.00 from a fellow soldier and to two specifications of having offered money to military police officials in the execution of their duties with intent to influence their official action, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, to be confined at hard labor for five years, and to be reduced to the grade of Recruit E-1. The convening authority reduced the period of confinement to two years but otherwise approved the sentence. A board of review in the office of The Judge Advocate General of the Army affirmed the findings and sentence, and we granted accused's petition for review to determine whether the law officer erred in accepting the plea of guilty to the two offenses of bribery.

The operative facts necessary to present the issue properly are these. Prior to trial the accused, after having been fully informed of his rights by his defense counsel, forwarded a written proposal in which he offered to plead guilty to the charges and specifications

if the staff judge advocate would recommend to the convening authority that the maximum punishment approved by him would not exceed dishonorable discharge, total forfeitures, reduction to the lowest pay grade, and confinement at hard labor for two years. The staff judge advocate agreed to make the recommendation, which was accepted by the convening authority, and accused admitted his guilt.

Prior to accepting the pleas, the law officer held an out-of-court conference in which he carefully advised the accused of his rights and interrogated him concerning his desire to plead guilty. The record of this out-of-court hearing shows that the law officer very thoroughly and properly delved into the subject to make certain that the accused understood the effect of his plea, that his judicial confession was voluntary, and that neither undue influence nor illegal inducements were offered to deny him his right of free choice. Rather than quote the entire record of the out-of-court conference, we relate generally the information developed at the hearing. After the law officer notified the accused of his rights and ascertained that he was acting voluntarily and with the advice and consent of his counsel,

the law officer asked the accused to explain the reasons which impelled him to enter the guilty pleas. The accused first answered that he was in fact guilty, but he then went on to state that the investigating agent commenced the conversation dealing with bribery by asking him what he would pay if the prosecution was dropped. Accused indicated he would pay $300.00, at which point the agent left and returned with the desk sergeant who had to be in on the deal, inquiring how much accused would give him. Accused replied he would pay the latter $100.00, and he would have the money available for both officials in about six weeks. When the law officer asked accused to repeat the incident, exactly as it occurred, he stated that his reply to the agent's initial inquiry was that he had only $400.00, of which he would give the investigator $300.00. Thereupon the agent mentioned the desk sergeant, telling accused to go and get him. When accused had done so he was re-asked how much he would pay and he finally offered to give $300.00 to the investigating agent and $100.00 to the desk sergeant.

When the accused had finished relating his version of the transactions, the law officer announced that, in view of accused's contention that the agent initiated the criminal scheme, there might be some question about entrapment and that he had reservations about accepting the plea to the bribery offenses. Defense counsel consulted with the accused, and then made a statement in justification of the plea. The law officer was not convinced so he again notified the accused that he need not plead guilty to the bribery specifications and that he could withdraw his plea of guilty to the larceny charge if he desired to do so. Defense counsel then stated he had given serious consideration to the defense of entrapment, he had discussed the matter with the accused, he had talked with the witnesses who would testify for the prosecution, and he did not believe the defense could be sustained. Upon being interrogated by the law officer, the accused replied that he agreed with the statement. In addition, he stated that he knew the agents would dispute his version of the transaction, that he thought the court-martial would believe them and that he believed it was to his best interest to enter the plea of guilty. The defense counsel augmented this statement by saying the larceny offense alone would permit the court to impose five years' confinement, that he too believed the defense of entrapment would ultimately be resolved against the accused, and in his considered judgment the accused would be benefited by judicially confessing his guilt. Finally, the law officer who was interested in making certain that no improper influence was being exerted on the accused, made it clear he would not accept the plea unless the accused was of the opinion that it was for his best interests. Upon being assured such was accused's belief, the plea was permitted to stand.

Article 45(a), Uniform Code of Military Justice, 10 USC § 845, provides as follows:

"If an accused arraigned before a court-martial makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty."

Involved in that Article are three possibilities which should be considered by the law officer; namely, irregularity in the plea, a post-plea showing which brings out matters inconsistent therewith, and improvidence. In addition to those matters, there is the issue of voluntariness. Irregularity in the plea is not here involved, so we need only discuss improvidence, inconsistencies, and voluntariness. We treat them in the order stated.

In view of the fact that in the proceedings accused was represented by certified counsel and the issue of improvidence indirectly involves the judgment of defense counsel in advising the

law officer that it would be to his client's best interest to plead guilty, we mention some of the facts influencing his recommendation that the plea was provident. Had the accused been convicted on all three specifications, the maximum punishment to which he could have been sentenced would have been dishonorable discharge, eleven years' confinement at hard labor, total forfeitures, and reduction to the lowest pay grade. Shortly after apprehension—and parenthetically we mention the accused was observed in the perpetration of the larceny and caught red-handed with the stolen goods—the accused executed a written statement in which he confessed the larceny and admitted he offered a payment of $300.00 to the military police investigator if he were allowed to go free and $100.00 to the military police desk sergeant if he would forget about the case. The accused had two previous convictions on his record and with the larceny admitted his credibility would be doubtful. His statement in the out-of-court hearing was inconsistent in some respects, and the likelihood of a military police investigator and a desk sergeant soliciting bribes under the facts and circumstances shown by the entire record are extremely remote. In addition, the accused signed a stipulation of facts prior to trial in which he conceded that he made the offers to influence the official acts of the two military officials. Surely those matters would show the plea had merit unless defense counsel was in possession of information which might raise some doubt about the strength of the Government's case. For reasons which will hereinafter more fully appear, no showing to that effect is made.

In United States v Hinton, 8 USCMA 39, 23 CMR 263, in a unanimous opinion authored by the Chief Judge, we discussed the legal criteria for a determination of the inconsistency of a guilty plea. In that instance, the Chief Judge stated:

". . . In a guilty plea case we cannot disregard the probability that the accused and his counsel weighed the evidence and determined that it was inadequate for an effective legal

defense or to negate the existence of a specific intent. As a result, they could well have decided to disregard the evidence in favor of the possible advantage of a guilty plea. See Newman, Pleading Guilty for Considerations, A Study of Bargain Justice, 46 The Journal of Criminal Law, Criminology, and Police Science 780 (1956). The critical question, therefore, is whether the accused and his counsel were aware of the legal effect of the evidence claimed to be inconsistent with the plea of guilty."

In determining whether there was any inconsistency between the judicial confession and the unsworn  statement, we need only turn to the record, for there we find evidence that both accused and his counsel had given consideration to the defense of entrapment and were satisfied it could not be established. In that conclusion we concur. First, as the colloquy between the law officer and the accused and his counsel developed, it became apparent that the defense had appraised the evidentiary structure and concluded that, even if an issue could be raised, the quality and quantity of the Government's evidence would overwhelm the highly improbable testimony of the accused. Second, we find nothing in this record which negates an intent on the part of the accused to willingly offer to pay officers of the Government to escape prosecution. Taking his statement at face value, he goes no further than to say he would not have conceived the idea to give the two officers money to drop the prosecution if one of them had not suggested it. However, not once did he contend he did not have a consciousness of guilt. Nor did he assert that he did not offer money to have evidence suppressed. The gravamen of bribery is the perversion of justice, and it is a crime in which both the solicitor and the payor can be guilty. Merely because one opens up a conversation about a bribe does not mean that if an offer is made by the other party, he may go free because the former malefactor suggested the crime. Here we need not grapple with the question of whether

under different circumstances entrapment is a defense to bribery, for we do not have an unwilling victim who is induced to commit a crime by over-reaching agents. On the contrary, accused conceded that when the inquiry was made he did not demur but joined in the scheme by fixing the amount he would pay and the terms of payment. Certainly, he presented no circumstance which affected his right of free choice except his hope to escape prosecution. As we understand the law of entrapment, there must be evidence to show some unwillingness on the part of the accused to commit the crime, which is broken down by the activities of the Government agents. Here we have neither, as the accused was not only receptive to the suggestion, he went to some lengths to firm it into an agreement, and it is not inferable from his statement that the agents were using means to convince him against his will. Furthermore, when the law officer offered to permit accused to come to grips with the Government on the question of who originated the fraudulent scheme, and whether he was induced to commit an offense he would not have otherwise committed, the accused refused to accept the invitation. If he had no criminal intent, he was given the chance to require the prosecution to prove that element of the offense. Both he and his counsel knew the true facts, and they were unwilling to require the Government to produce them. In addition, after a full and thorough explanation was made to the accused about his privilege to put the Government on its proof that there was no entrapment, he stated he was pleading guilty to the crime because he did offer to pay one agent $300.00 and the other agent $100.00 if they would drop the investigation. He and his counsel recognized his guilt and pleaded with the law officer to permit the plea to stand. They were satisfied there was no inconsistency, and we find no reason to disagree with their conclusion. Of course, accused might now like to change his mind, although he personally makes no representation that he would change his plea if given another hearing.

That brings us to the question of voluntariness. The law officer did everything within reason to satisfy himself that the plea was voluntary and to make certain the accused understood his right to require the Government to prove every element of the offenses. He asked about coercion, compulsion and inducement, he invited the accused to put the Government to the test, and he made it clear to the accused that he should stand on that right unless he was convinced it was to his best interest not to stand trial. Moreover, accused was defended by experienced counsel who insulated him from external pressures and hasty and ill-conceived action. Defense counsel understood the risks the accused would run on trial and the benefits he would enjoy from his confession of guilt. Accused himself fully understood that he had much to win and little to lose by complying with his offer for, on the one hand, had he elected to stand trial and been found not guilty of the briberies, his sentence on the larceny offense would have been substantial. On the other hand, had he lost, his affirmed sentence might have included confinement much in excess of two years.

In the military service, a practice has been developed which permits an accused to initiate proceedings for leniency in the event he enters a plea of guilty. This consists of an overture to the convening authority to set the maximum sentence he will affirm if a plea of guilty is entered. A reading of many records in which pleas of guilty have been entered has established a sound base for the belief that this is a salutary procedure for an accused. He does not make a deal with the tribunal which imposes the original sentence, but he does fix a ceiling which is binding on appellate authorities. The convening authority must eventually determine the appropriateness of sentence, and he gives the accused advance information on his views if the accused elects to confess his guilt. The procedure offers the accused a chance to make certain that his sentence will not exceed fixed limits and yet leaves him unbridled in the presentation of extenuating and

**615**

mitigating evidence at the trial. He can bring before the court-martial members any fact or circumstance which might influence them to lessen the punishment and his lot is better if they find appropriateness at a lower level than the understood maximum. The arrangement with the convening authority cannot help but benefit the accused for it reduces his punishment if a guilty plea is entered from the permissible maximum set by law. Certainly that procedure does not smack of compulsion.

It is feared by some that this procedure may work to the disadvantage of the accused, but I assert experience shows to the contrary. It is not unlike the well-established civilian practice, but it is more beneficial to the accused. It is generally known that in civilian courts the great bulk of criminal cases is disposed of by pleas of guilty after some discussion between the defendant and his counsel and the prosecuting attorney. The latter frequently makes some commitment as to the sentence he will recommend or as to other charges or prosecutions he will *nolle prosequi*. If such a practice were discouraged, there would be little incentive for a guilty man to confess his error and seek clemency at the hand of the judge. In the military, the same principle should be applicable, and in the end justice would be harmed if accused persons could not be assured of some clemency if they plead guilty. Of course, it is possible that in individual cases abuses could creep in and prejudice result. Obviously, if threats, coercion of any form, misrepresentations, unfulfilled promises, deceptions, or illegal inducements of such nature that an accused is denied his right of free choice, are employed, then the plea is involuntary and should not be accepted. But those influences can be ferreted out if a proper record is made and they are not found in the case at bar.

The rule in civilian courts is that a plea of guilty should not be accepted without the judge first determining that the plea is made voluntarily. Rule 11, Federal Rules of Criminal Procedure.

Certainly that rule has been and is used by military courts, and that is the theory we outlined above. If it is made to appear to a law officer from the facts adduced that the accused was denied his free right of choice, then the plea should be rejected. On the contrary, if all the evidence shows a complete freedom of will on the part of an accused who has consulted with and been advised by counsel, the plea should be accepted. In the case at bar, the law officer took every reasonable precaution to make certain that the plea of guilty was the voluntary act of the accused and the record supports his conclusion that the plea was provident. Obviously, some reward is anticipated when an accused seeks to obtain a favorable recommendation on sentence. It would be pointless for this defense counsel to have discussed the subject of leniency with the staff judge advocate if he did not expect to gain some benefit from the negotiation. But that does not raise the spectre of involuntariness and when the offer is initiated by the accused voluntarily, its acceptance by the Government does not charge the transaction with an illegal inducement. We, therefore, do not find involuntariness in this record.

For the foregoing reasons, we affirm the decision of the board of review.

QUINN, Chief Judge (concurring in the result):

The negotiated plea program is not quite as salutary as the principal opinion makes it out to be. I noted some of the difficulties inherent in the program in my opinion in United States v Welker, 8 USCMA 647, 25 CMR 151. I there cautioned that "continuation of these trends may require reexamination of the practice of negotiating agreement on the plea and the sentence with the convening authority." However, I am satisfied that the accused's plea of guilty in this case was voluntary and not inconsistent with his statement in the out-of-court hearing. It is not disputed that the accused committed the offense charged. Initially, he raised some question as to the availability of the defense of entrapment, but when the matter was specifically called to his

616

attention by the law officer, he consulted with qualified counsel, and decided not to present the defense. Thus, the accused's decision was based upon an intelligent evaluation of the evidence and of his possible defenses. Therefore, I concur in affirming the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

·At the outset, I note that my views concerning the negotiated guilty plea program coincide with those of the Chief Judge. Too many records come before us with multiplicious charges, inconsistencies between the plea and accused's statements, and minimal presentation of matters in extenuation and mitigation to merit the conclusion that the program is entirely advantageous. Indeed, this case reflects one of the evils arising from that very arrangement.

As I understand the rationale of my brothers, we determine the providence of guilty pleas in accordance with the provisions of Uniform Code of Military Justice, Article 45, 10 USC § 845. Hence, the plea must be set aside if the record supports the conclusion that it was improvident, involuntary, or contains inconsistent statements or actions by the accused. With this proposition, I unreservedly agree. United States v Epperson, 10 USCMA 582, 28 CMR 148; United States v Lemieux, 10 USCMA 10, 27 CMR 84; Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 1053–1055. Nevertheless, I believe they read the record too narrowly when they conclude that this accused did not, contrary to his plea, assert that the idea of bribery was implanted in his mind by military police officials.

Tried by general court-martial convened by the Commanding General, 82d Airborne Division, Fort Bragg, North Carolina, the accused pleaded guilty to larceny of $116.00, in violation of Code, supra, Article 121, 10 USC § 921, and two specifications of offering bribes to military police investigators, in violation of Code, supra, Article 134, 10 USC § 934.

After delivering to the accused the formula advice concerning the meaning and effect· of his plea, the law officer, Colonel Robert P. Pike, convened an out-of-court hearing in order to inquire into the providence of the pleas of guilty. It there transpired that accused's pleas were entered pursuant to a pretrial agreement with the convening authority concerning the sentence which he would approve. Accused admitted that he was in fact guilty of larceny. The following statements were made, however, with respect to the charges of offering bribes:

"LO: But did you promise $300.00 to Richards if he dropped this investigation of the charge?

"ACCUSED: Well, sir, first he asked me what it would be worth to get me out of trouble so I told him. So he went and got Specialist Downs, the desk sergeant. So he came back and said how much would I give him, he asked me how much I would give him . . . I mean, as he was on duty, and I told him, well, I'd give him $100.00. So he asked me how soon I would have it and I told him about the middle of August.

"LO: Are you talking about the desk sergeant, now?

"ACCUSED: The desk sergeant *and* the CID.

"LO: Well, who brought up the subject first?

"ACCUSED: The CID agent, sir.

"LO: Will you tell me just what happened when the CID agent brought it up, when the thing was. first mentioned?

"ACCUSED: Well, I was sitting up there after I was brought back to the desk and he asked me how much amount of money is it worth to you to get out of trouble, and I told him that I didn't have but $400.00, and he asked me how much I would be willing to give to him, and I told him, '$300.00,' so he said, 'Well, the desk sergeant knew about it so you'll have to give him something too because he knows about it,' and he told me to go and get him, so I got him and sat

**617**

down and he asked me again. I told him I'd give him 100 and I'd give the CID agent 300, so then he told me that he had another charge on me, that is, on me. He said he had another charge against me because I tried to bribe him.

"LO: *Well, who first mentioned the subject of getting out of trouble?*

"ACCUSED: *The CID agent.*

"LO: *Did you, in any way, suggest to him first that you might be willing to pay him a little something?*

"ACCUSED: *No, sir.*

. . . . .

"LO: Well, did you have any idea before Richards mentioned this that you might be able to give him some money to get the case dropped?

"ACCUSED: No, sir, I didn't have any idea.

"LO: Well, now, I'm wondering about this plea with respect to Specification 1 and 2 here, Captain Robinson. In view of the fact and on the basis of what Watkins tells me that it was Richards who first suggested this bribe without any mention or suggestion on Watkins' part, the question of entrapment comes to mind immediately, and I am very doubtful as to whether this plea is provident as to Charge II and both of its Specifications.

"DC: Let me talk to the accused for a minute, sir.

"LO: Very well. You want to talk to him in private?

"DC: Yes, sir." [Emphasis partially supplied.]

Thereafter, the appointed defense counsel consulted with the accused. Following that conference, the law officer again questioned the accused concerning the circumstances surrounding the alleged offers of bribes. The accused reiterated his previous answers. The law officer then declared:

"Well, I'll state to the trial counsel that the defense counsel at this time, that on the basis of what the accused has told me, *in the absence of*

*any further showing, I would not accept the plea of guilty to Specifications 1 and 2 of Charge II, and, of course, I will also point out that that action would necessarily void the agreement with the convening authority which has been marked Appellate Exhibit Number 1, and if the trial proceeds it would be a question of what sentence the court would impose.* I might also say that the accussed should understand clearly that he would also have the opportunity to withdraw the plea of guilty to the Specification and Charge I unless he persisted in his plea of guilty to Charge I also.

"DC: Sir, we would like to state for the record that it is a question of fact that would have to be determined; however, *after having talked with the accused there is a possible defense of entrapment; however, as defense counsel, I do not believe it could be successfully pursued.* Having talked with the accused, his plea still stands guilty as to all charges.

"LO: Will you tell me how you feel about the statement that Captain Robinson has just made?

"ACCUSED: I like that statement. It's O.K." [Emphasis supplied.]

The accused persisted in his pleas of guilty as he did not wish to "take a chance on having this question decided" against him. He stated that he understood his plea had the effect of admitting he offered bribes to the military investigators, but that his best interests would be served by its entry. It was motivated by the conclusion that the court members would discount his assertions in the face of expected contrary testimony by the policemen.

Following the foregoing discussion, the law officer accepted the accused's pleas of guilty, and the court-martial proceeded to findings without the presentation of any evidence other than a stipulation of fact in which it was set forth that the accused had promised the investigators stated sums in return for his freedom. Following a brief statement in mitigation and extenuation by accused's counsel, the court-martial re-

tired to consider the question of appropriate penalty. It returned a sentence to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for five years, and reduction to the lowest enlisted grade. Pursuant to the pretrial agreement, the convening authority approved only so much of the sentence as provided for dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for two years, and reduction to the lowest enlisted grade. The board of review affirmed, and we granted review on the issue of the providence of accused's pleas of guilty to the bribery charges.

Code, supra, Article 45, 10 USC § 845, provides:

"(a) If an accused arraigned before a court-martial makes an irregular pleading, *or after a plea of guilty sets up matter inconsistent with the plea,* or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." [Emphasis supplied.]

During the hearings before the House Armed Services Committee on the then proposed Uniform Code of Military Justice, alarm was expressed concerning whether guilty pleas would be obtained unfairly from military defendants. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 1053–1055. Mr. Felix Larkin, General Counsel, Department of Defense, explained to the Committee that Code, supra, Article 45, was designed to obviate that possibility. Thus, he declared:

"In addition to that we feel that the meaning and the effect of the plea of guilty which he proposes to take should be explained to him and that explanation should consist of a statement telling him that the plea amounts to an admission that he committed the crime that is charged against him, that it makes conviction mandatory, and that he should be told the sentence which can be imposed upon him if he admits doing the acts which are charged against him.

"If he refuses, if he does not want to take the plea under those circumstances, *or if he wants to make the plea and will not conform to those circumstances which are to make sure that he understands what he is doing,* then, the plea should not be accepted.

"We feel that it is a procedure which will give an added amount of protection to the innumerable cases where pleas of guilty are taken, particularly among the younger men." [House Hearings, supra, page 1054.] [Emphasis supplied.]

In addition to the foregoing, both the House and Senate Armed Services Committees made crystal clear in their reports the conditions under which guilty pleas should be accepted in trials by court-martial. House Report No. 491, 81st Congress, 1st Session, page 23; Senate Report No. 486, 81st Congress, 1st Session, page 20. The language of the House Report, identical to that utilized by the Senate Committee, is as follows:

"The provisions of this article will be supplemented by regulations issued by the President. It is contemplated that the recommendations of the Keeffe Board as to the procedure to be followed by a court martial when a plea of guilty is entered will be adopted. The proposed procedure is as follows (see Keeffe report, p. 142):

"(1) In general and special court-martial cases, the plea should be received only after the accused has had an opportunity to consult with counsel appointed for or selected by him. If the accused has refused counsel, the plea should not be received.

"(2) In every case the meaning and effect of a plea of guilty should be explained to the accused (by the law officer of a general court martial; by the president of a special court martial; by the summary court), such explanation to include the following:

**619**

"(a) That the plea admits the offense as charged (or in a lesser degree, if so pleaded) and makes conviction mandatory.

"(b) The sentence which may be imposed.

"(c) That unless the accused admits doing the acts charged, a plea of guilty will not be accepted." [House Report, supra, page 24.]

In accordance with the expressed intent of Congress, the President promulgated regulations governing the acceptance of guilty pleas. Manual for Courts-Martial, United States, 1951, paragraph 70. Of particular pertinence to this case is the statement in Manual, supra, paragraph 70*b*, to the effect that:

"Whenever an accused, in the course of trial following a plea of guilty, makes a statement to the court, in his testimony or otherwise, inconsistent with the plea, the court will make such explanation and statement as the occasion requires. If, after such explanation and statement, it appears to the court that the accused in fact entered the plea improvidently or through lack of understanding of its meaning and effect, *or if the accused does not voluntarily withdraw his inconsistent statement, the court will proceed to trial and judgment as if he had pleaded not guilty.*" [Emphasis supplied.]

Similarly, this Court has consistently adhered to the rule that post-plea statements inconsistent with the accused's judicial confession of guilt require that his plea be rejected. United States v Epperson, 10 USCMA 582, 28 CMR 148; United States v Lemieux, 10 USCMA 10, 27 CMR 84; United States v Lenton, 8 USCMA 690, 25 CMR 194; United States v Welker, 8 USCMA 647, 25 CMR 151; United States v Kitchen, 5 USCMA 541, 18 CMR 165; United States v Messenger, 2 USCMA 21, 6 CMR 21. Our view of the procedure to be followed when the accused seeks to maintain at the trial a position inconsistent with his plea is not at all different from the standard by which providence is measured in the United States courts. Judge

Latimer points out that the rule there is set forth in Rule 11, Federal Rules of Criminal procedure, but the inquiry of a United States judge is not limited merely to discretionary consideration of the voluntariness of the plea. Rule 11, supra, provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. *The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge."* [Emphasis supplied.]

The whole purpose of the Rule is to establish that the defendant is pleading guilty because he is in fact guilty. Shelton v United States, 242 F2d 101, 246 F2d 571 (CA 5th Cir) (1957), reversed on concession of error by Government, 356 US 26, 2 L ed 2d 579, 78 S Ct 563; Julian v United States, 236 F2d 155 (CA 6th Cir) (1956); Edwards v United States, 256 F2d 707 (CA DC Cir) (1958); Fogus v United States, 34 F2d 97 (CA 4th Cir) (1929). In Edwards v United States, supra, Circuit Judge Burger pointed out, at page 710:

". . . It may be argued that a plea of guilty is not understandingly made when defendant is unaware of certain technical defenses which might very well make the prosecutor's job more difficult or even impossible were he put to his proof. However, we think 'understandingly' refers merely to the *meaning* of the charge, and what acts amount to being *guilty* of the charge, and the *consequences* of pleading guilty thereto, rather than to dilatory or evidentiary defenses."

And the rule was set forth in Fogus v United States, supra, at page 98, as follows:

"In the case of Nicely v Butcher, 81 W Va 247, 94 SE 147, the Supreme Court of West Virginia said: 'Before receiving a plea of guilty in a criminal case, the court should see that it is made by a person of competent intelligence, freely and volun-

tarily, and with *a full understanding of its nature and effect, and of the facts on which it is founded.'*

"We think this correctly states the rule, and at the conclusion of the hearing on the petitions, the judge below held that this rule had been strictly complied with." [Emphasis supplied.]

From the foregoing, I can only conclude that Congress intended courts-martial to be governed by the rule applicable in the Federal courts and set forth both in the Code and the Manual. Manual for Courts-Martial, supra, paragraph 70; House Report, supra, page 1054. That requires a determination by the law officer concerning whether accused's plea is voluntarily entered and whether he in fact admits his guilt. Apprehensive of the forces which might bear upon a military accused and induce him to plead guilty, our legislative branch has, in effect, demanded that he make a truly judicial confession when questioned concerning the formal answer which he has made to the charges against him.

This case illustrates the wisdom of that Congressional command. The accused, although advised of their effect by the law officer and counsel, repeatedly stated the existence of facts, which, if believed, constituted a complete defense to the charges of bribery placed against him. United States v McGlenn, 8 USCMA 286, 24 CMR 96. His continued protestations brought forth only an admonition from the law officer that, if he did not plead guilty, the limitation placed on the sentence by his pretrial agreement would be voided. Faced with that consequence, the accused persisted in his plea, maintaining at the same time that it was entered only because of the agreement and the advice of his counsel that he would be unable to convince the jury of his innocence. At no time did the law officer take the action required by Code, supra, Article 45, or paragraph 70*b* of the Manual. In short, what was done here was judicially to persuade the accused to plead guilty, although he continued to state matters consistent only with innocence. This is the very evil which Congress

sought to avoid. House Report, supra, page 25. Indeed, reliance solely upon the agreement constitutes involuntariness as a matter of law. Shelton v United States, supra. And when that reliance is coupled with a statement completely inconsistent with the plea, Article 45 and our former holdings in the area demand that the plea be set aside.

Despite the foregoing considerations, my brothers reach the conclusion that the plea was provident. Emphasis is placed upon its voluntary character rather than the inconsistency between accused's plea and his in-court explanations. Accused's counsel is characterized as experienced, although the record contains not a hint of his military expertise. Indeed, I suggest that it indicates the contrary conclusion, for a fair reading of the matters covered in the out-of-court hearing shows an attorney who has chosen personally to judge his client's guilt rather than to advocate his cause. Satisfied that the accused had offered the bribe and entertaining no respect for his credibility, he decided to persuade him to adopt the course of pleading guilty in return for a pretrial agreement. Perhaps counsel was correct in assessing the probabilities in the case, and it may well be that his advice was wise. What everyone seems to overlook, however, is the fact that the ultimate choice of courses of action must repose in the accused. It he maintains that the facts are such that he is, in law, innocent of the charge, it is not the duty of counsel to attempt to override his assertions. Rather, it is his duty to advocate his client's cause and to support it in any manner consistent with the law and the canons of our profession. In short, he is an attorney for the accused, and his concurrent status as an officer in the armed services in nowise detracts from his professional duties.

In this connection, I note with interest that the defense counsel was apparently unaware of the facts elicited from the accused by the law officer until the in-court statements were made, for the record reveals that he did not conceive of the possible existence of entrapment

**621**

until after he had completed his brief conference with his client. We are left to speculate concerning whether this resulted from a failure previously to interview the accused properly or whether the latter had merely withheld pertinent information. In any event, it is clear to me that providence of a guilty plea should not be measured by the hurried judgment of an attorney concerning the credibility of his client.

Turning again to the principal opinion, I detect in its brief allusion to entrapment a belief that this defense may not exist with respect to the offense of offering bribes. To the contrary, in United States v McGlenn, supra, we pointed out that entrapment was available as a defense whenever Government agents induced the commission of an offense, unless they reasonably suspected that the party involved was engaged in the commission of a crime, or was about to do so, or the original suggestion or initiative came from the perpetrator himself. United States v McGlenn, supra, at page 291. None of these factors are present here. There is not a hint in the record that the police had any cause to suspect that the accused would offer them a bribe, nor is there any indication that he initiated the offer. His explanation to the law officer, despite every opportunity to recant, clearly establishes that the entire concept originated with the investigators.

Finally, the offense of offering bribes is no different with respect to entrapment than any other crime. Its existence as a defense was recognized in United States v Louie Gim Hall, 245 F2d 338 (CA 2d Cir) (1957). Moreover, public policy demands its application to such transactions with Government officers. Frequently, they possess the authority to grant or deny an accused's desires. Hence, they are well placed to play upon his hopes and falsely implant in his mind the belief that he has only to offer a few dollars in order to attain his end. These considerations are peculiarly applicable to this accused's situation, for, as the author of the principal opinion notes, the Government agents possessed almost incontestable proof of his guilt of larceny. Faced with such evidence, what defendant would not respond to the overtures of police officers and seize upon a proffered opportunity to escape the consequences of his admitted misconduct? That is the very type of situation which the defense of entrapment is designed to prevent, and I am of the opinion that it is applicable here.

In sum, I believe myself to be in agreement with my brothers concerning the law which they espouse. I depart entirely from them in their finding that, measured by the command of Code, supra, Article 45, the accused's plea was provident. I rather conclude that he, earnestly maintaining the existence of facts consistent only with innocence, finally acceded to the exhortations of his counsel in the fear that he would otherwise lose the benefit of his pretrial agreement. Thus, I am of the view that the record establishes the improvidence of his plea as a matter of law.

I would reverse the decision of the board of review and return the record of trial for reassessment of sentence on the larceny charge or a rehearing on the bribery offense and the sentence.